UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

IN RE:

FRANK AND ANGELA VICKERS                                    CASE NO. 11-52816

DEBTORS

J. JAMES ROGAN, TRUSTEE                                           PLAINTIFF

V.                                                                              ADV. NO. 12-5028

EQUIFIRST CORPORATION, ET AL.                              DEFENDANTS

**MEMORANDUM OPINION**

This matter is before the Court on cross-motions for summary judgment. The Trustee moves for summary judgment pursuant to 11 U.S.C. § 544 to avoid a mortgage lien on the Debtors' real property held by the Bank of New York Mellon Trust Company, N.A., as Grantor of Protium Master Trust Agreement ("BoNY") based on an allegedly invalid indorsement of the promissory note. The Trustee contends that the signature on the indorsement is illegible and unauthorized, making the indorsement in blank invalid and the lien on the real property avoidable pursuant to § 544 and *In re Collins*, 456 B.R. 284 (B.A.P. 6th Cir. 2011). The BoNY moves for summary judgment on the grounds that its mortgage is properly perfected, the indorsement in blank is valid under Kentucky law, and it has possession of the note, entitling it to enforce the note.

The Court, having reviewed the record and considered the arguments of counsel, finds that there is no genuine issue of material fact and the BoNY is entitled to summary judgment as a matter of law. The Trustee may not avoid the BoNY's lien on the Debtors' real property because

1

the BoNY holds a properly perfected Mortgage and is in possession of an enforceable note with a valid indorsement in blank.

### Facts

The following facts are undisputed. On April 16, 2007, the Debtors, Frank and Angela Vickers, executed a promissory note ("Note") in favor of EquiFirst Corporation ("EquiFirst"). The same day, the Debtors executed and delivered a mortgage to Mortgage Electronic Registration System, Inc. ("MERS"), as nominee for EquiFirst and its assigns, on Debtors' real property and improvements located at 2628 Cashel Court, Lexington, Kentucky ("Real Property"). The Mortgage was recorded in the Fayette County Clerk's Office on April 25, 2007. The Note and Mortgage are collectively referred to herein as the "Loan."

Approximately 4 years later, on October 10, 2011, Debtors filed for chapter 7 relief. J. James Rogan was appointed Trustee.

On January 19, 2012, three months after the Debtors filed for bankruptcy, MERS assigned the Mortgage to the BoNY. An Assignment of Mortgage was recorded with the Fayette County Clerk on March 21, 2012.

On July 7, 2012, Statebridge Company, LLC ("Statebridge"), a loan servicer for the BoNY, filed a secured proof of claim on the BoNY's behalf in the amount of $113,354.29 [POC #15-1]. Attached to the Proof of Claim are the Note, Mortgage, and Assignment of Mortgage. Attached to the Note is an allonge entitled "Note Endorsements" that contains an undated stamped indorsement of the Note in blank. The indorsement states, "Without Recourse, Pay to the Order of:" and is followed by blank space and a signature line. Above the signature line is the stamped name "EquiFirst Corporation" and below the signature line is the printed name of

"Andrea Okey" and the title "Assistant Vice President." The indorsement is signed but the signature is illegible. Further, the printed name of "Andrea Okey" is crossed out.

On June 5, 2012, the Trustee filed this adversary proceeding against EquiFirst, MERS, and Statebridge (collectively the "Defendants") seeking to avoid the interest of the Defendants in the Debtors' Real Property pursuant to § 544 and alleging that the Defendants' interest in the Real Property is unperfected because the indorsement is invalid and the Defendants could not enforce the Note on the petition date. EquiFirst did not file an answer to the Complaint. Statebridge and MERS were dismissed by agreed order and the BoNY was added as a party defendant on October 5, 2012.

On November 12, 2012, the Trustee amended his Complaint to specifically allege that the indorsement of the Note is invalid because it does not contain an authorized signature. The BoNY answered denying the Trustee's allegations and asserting that its interest is perfected because: (1) the Mortgage is properly recorded; and (2) it is the lawful holder in possession of the Note.

The parties filed cross-motions for summary judgment. In support of his position that the signature on the indorsement is unauthorized, the Trustee relies on the expert testimony of James H. Ensminger, a retired loan officer and executive vice president at Central Bank & Trust Company. Mr. Ensminger testified by affidavit that the signature on the indorsement is not the signature of Andrea Okey, but the signature of an unknown person, and the name of the signer should be printed on the indorsement. The Trustee further relies on an example of a note indorsement in another case where the name of the signer is printed on the indorsement for identification. In addition, the Trustee attempts to raise a genuine issue of material fact regarding the date of the alleged transfer to the BoNY by challenging the credibility of the

BoNY's proof via the BoNY's Activity Log, correspondence to the Debtors produced by the BoNY on or around the time the alleged transfer occurred, and documents filed by the BoNY with the Kentucky Secretary of State. The Trustee contends that these documents collectively raise at least a genuine issue of material fact that the BoNY was not in existence at the time it allegedly gained possession of the Note.

In support of its position that it is the holder of a Note validly indorsed in blank, the BoNY relies on the Note, Mortgage, and Assignment of Mortgage, as well as an affidavit by David McConnell, the Managing Director of Statebridge, its servicer, and correspondence, kept as part of its business records, notifying the Debtors of the owner of the Note, to wit:

>  (1)  three letters dated December 16, 2008, February 17, 2009, and March 18, 2009, from HomEq Servicing to the Debtors identifying the current holder as Barclays Bank, PLC;
> 
>  (2)  a Mortgage Loan Transfer Notice from HomEq Servicing to the Debtors dated November 10, 2009, identifying the "Bank of New York Mellon, as Trustee," as the current holder of the Note as of September 17, 2009;
> 
>  (3)  five letters dated November 2, 2009, December 3, 2009, February 2, 2010, March 5, 2010, and April 2, 2010, from HomEq Servicing to the Debtors identifying the current owner of the Note as "[t]he BoNY Mellon Trust Co., N.A., as Grantor Trustee of Protium Master Grantor Trust;" and
> 
>  (4)  a letter dated July 1, 2010, from HomEq Servicing to the Debtors, identifying Statebridge as the new servicer of the Loan.

Further, the BoNY asserts, and the Trustee does not contest, that the BoNY is currently in possession of the original Note.

The Court heard oral arguments and deemed the matter submitted. The issue is now ripe for determination.

4

## Discussion

**A.     Summary Judgment is Appropriate Where There are No Genuine Issues of Material Fact.**

Summary judgment is appropriate if "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law." *See* Fed. R. Bankr. P. 7056 (incorporating by reference Fed. R. Civ. P. 56).  The movant bears the burden of showing that no genuine issues of material fact are in dispute, and the evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986); *Provenzano v. LCI Holdings, Inc.,* 663 F.3d 806, 811 (6th Cir.2011).

The Court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249. A genuine issue for trial exists when there is sufficient "evidence on which the [factfinder] could reasonably find for the plaintiff." *Id. at* 252.  For the reasons set forth more fully below, the Court finds that the BoNY is entitled to summary judgment as a matter of law.

**B.     The Trustee May Not Avoid a Properly Perfected Mortgage Secured by an Enforceable Note Held by the BoNY pursuant to § 544.**

The Trustee seeks to avoid the BoNY's lien on the Real Property pursuant to § 544. Section 544 gives the Trustee the status of a hypothetical lien creditor deemed to have perfected his interest as of the date of the filing of the bankruptcy petition.  It also grants the Trustee the power to take priority over or avoid security interests that are unperfected on the petition date.

The Trustee contends that "under Kentucky law, without evidence of debt, there is no valid, enforceable mortgage." *Rogan v. Litton Loan Servicing, L.P.* (*In re Collins)*, 456 B.R.

5

284, 294 (B.A.P. 6th Cir. 2011).  In *Collins*, the Trustee brought an adversary proceeding pursuant to § 544.  The Sixth Circuit B.A.P reversed the bankruptcy court's order granting the creditor's motion to dismiss because there was no evidence the debt existed.  There is no dispute here that the Debtors owe a debt that is secured by a Mortgage.  Nevertheless, the Trustee argues that BoNY cannot collect on the debt because it has not proven who signed the indorsement.  The Trustee's argument is not supported by Kentucky law or the Trustee's evidence.

### A. A Holder of a Note with a Valid Indorsement in Blank May Enforce the Note.

In Kentucky, a "person entitled to enforce" an instrument means:

> (a) The holder of the instrument;
>
> (b) A nonholder in possession of the instrument who has the rights of a holder; or
>
> (c) A person not in possession of the instrument who is entitled to enforce the instrument pursuant to KRS § 355.3-309 or KRS § 355.3-418(4).  A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

KRS § 355.3-301.  A "holder" is defined in part as:

> (1) The person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession;

KRS § 355.1-201(u).  Therefore, if the BoNY is in possession of the Note and the indorsement is valid, it is the holder of the Note and entitled to enforce the Note.

### B. The Note Contains a Valid Indorsement in Blank under Kentucky Law.

An 'indorsement" is:

> [A] signature, other than that of a signer as maker, drawer, or acceptor, that alone or accompanied by other words is made on an instrument for the purpose of:

6

> (a) Negotiating the instrument;
>
> (b) Restricting payment of the instrument; or
>
> (c) Incurring indorser's liability on the instrument,
>
> but regardless of the intent of the signer, a signature and its accompanying words is an indorsement unless the accompanying words, terms of the instrument, place of the signature, or other circumstances unambiguously indicate that the signature was made for a purpose other than indorsement. For the purpose of determining whether a signature is made on an instrument, a paper affixed to the instrument is a part of the instrument.

KRS § 355.3-204(1). Thus, the only requirement for a valid indorsement under Kentucky law is: (a) a signature; and (b) words made on an instrument for the purpose of negotiating the instrument, restricting payment of the instrument or incurring the indorser's liability on the instrument. The statute expressly states that without "unambiguous[]" evidence of a signature made for the purpose other than an indorsement, the "signature and its accompanying words is an indorsement."

The Trustee argues there is no proof that a representative of EquiFirst made the signature. The Trustee points to the fact that the name of Andrea Okey is crossed out and the identity of the signer is unknown because the signature is illegible and the name is not printed by the signature. The Trustee's arguments are unpersuasive. KRS § 355.3-204 does not require the signer to be identified, contrary to the Trustee's expert testimony. Even accepting Mr. Ensminger's expert opinion, his testimony does not prove that the signature is unauthorized. Moreover, Mr. Ensminger's conclusion that the indorsement should have had a printed name of the signer is a legal conclusion that is contrary to KRS § 355.3-204(1). At best, Mr. Ensminger's testimony is nothing more than his opinion of the best practices of lending institutions in negotiating

7

instruments of this nature.  The Trustee offers no proof to support his speculative conclusion that the person who did sign the indorsement was not authorized to do so.

The Trustee argues that it is the BoNY's burden to present proof that an authorized representative signed the document pursuant to KRS § 355.3-308(1).  KRS § 355.3-308(1) states,

> In an action with respect to an instrument, the authenticity of, and authority to make, each signature on the instrument is admitted unless specifically denied in the pleadings.  If the validity of a signature is denied in the pleadings, the burden of establishing validity is on the person claiming validity, but the signature is presumed to be authentic and authorized unless the action is to enforce the liability of the purported signer and the signer is dead or incompetent at the time of trial of the issue of validity of the signature.  If an action to enforce the instrument is brought against a person as the undisclosed principal of a person who signed the instrument as a party to the instrument, the plaintiff has the burden of establishing that the defendant is liable on the instrument as a represented person under KRS § 355.3-402(1).

While the Court agrees the statute places the burden on the BoNY to prove the signature on the indorsement is valid, it further provides the BoNY a presumption of authenticity and authority.  Thus, the burden shifts to the Trustee to produce proof to rebut this presumption and the Trustee has failed to do so.

The Trustee has produced no evidence that the signature made on the indorsement was for any reason other than negotiating the instrument.  The unambiguous words "Without Recourse, Pay to the Order of:" is proof of an intention to negotiate the instrument.  The indorsement contains the signature and unambiguous language showing an intent to negotiate; that is all that is required under KRS § 355.3-204(1).  *See also Rogan v. Branch Banking & Trust Co. (In re Asberry)*, E.D. Ky. Bankr. Case No. 12-50602, Adv. No. 12-5045 (March 1, 2013) [Doc. 23].  The Court finds that the signature on the indorsement is sufficient under Kentucky law and the indorsement in blank is valid.

### C.    The BoNY was the Holder of the Note on the Petition Date and May Enforce the Note.

The BoNY submits that it is the holder of the Note because it has had possession of the Note since September 17, 2009, two years prior to the filing of the bankruptcy on October 10, 2011. The affidavit testimony of David McConnell and the BoNY's business records support the BoNY's contention.

The Trustee attempts to raise a genuine issue of material fact as to possession of the Note by arguing that the BoNY was not in existence at the time it allegedly took possession of the Note. The Trustee relies on the BoNY's Application for Certificate of Authority ("Application") to transact business in Kentucky, filed with the Kentucky Secretary of State. The Trustee's arguments are not well taken.

The Application was filed on October 11, 2005, by the Bank of New York Trust Company, N.A., as opposed to the Bank of New York *Mellon* Trust Company, N.A. (emphasis added). Included with the Application is a Certification by the Comptroller of Currency that certifies that on September 12, 2006, the Bank of New York Trust Company N. A. is authorized to transact business as a national banking association. On June 19, 2010, the Bank of New York Trust Company, N.A. filed an amended certificate of authority ("Amended Application") for the purpose of changing its name from the Bank of New York Trust Company to the Bank of New York *Mellon* Trust Company, N.A., or the Defendant BoNY herein. Included is a certification by the Comptroller of Currency dated January 7, 2010, that the Bank of New York *Mellon* Trust Company, N.A. is authorized to transact the business of banking and exercise fiduciary powers. The Trustee argues that these documents prove that that the Bank of New York *Mellon* Trust Company was not in existence on September 17, 2009, the date of the transfer.

9

The records show that the BoNY was in existence at least as of October 11, 2005, the date the application was filed, albeit under a different name. The BoNY then changed its name, as reflected by the Amended Application.[1] The entity is the same; only the name changed. The documents do not create a genuine issue of material fact that the BoNY was not in existence at the time of the transfer.

Further, there is ample other proof in the record that the BoNY received possession of the Note on September 17, 2009, including: (1) David McConnell's uncontroverted affidavit testimony; (2) the correspondence from the prior servicer, HomEq, recognizing the BoNY as the owner of the Note as of September 17, 2009; and (3) the BoNY's Activity Log showing a transfer in on "09-09-18/16:19" to "Protium-Finance."[2] The evidence supports that the BoNY was in existence and took possession of the Note on or around September 17, 2009.

### D. Provisions in the Protium Master Trust Agreement are not Relevant to Determine the Validity of the Indorsement or Transfer Date of the Note.

The Trustee further raised in his briefs and at oral argument that his ability to contradict the testimony offered by BoNY regarding the transfer date was stymied by the Court's ruling that the Trustee is not entitled to discover the Protium Master Trust Agreement ("Trust Agreement"). The Trustee moved to compel, among other things, production of the Trust Agreement. The motion was opposed and the Court overruled the Trustee's motion on the

---

[1] The purpose of the filed documents is to seek authority with the Kentucky Secretary of State to transact business in Kentucky. The BoNY is not required to obtain a certificate of authority when "creating or acquiring an indebtedness, mortgages, and security interests in real, personal, or tangible property" or "securing or collecting debts or enforcing mortgages and security interests in property securing the debts." *See* KRS § 14.A9-010(2)(g) and (h).

[2] The Trustee argues that "Protium-Finance" as identified in the Activity Log is a different entity than the "Protium Master Grantor Trust." The BoNY explained in its supplemental discovery responses that "the entry of Protium-Finance on the custodian's log is an internal designation used by BoNY to reference the entity that deposited the loan in the Protium Master Grantor Trust." [Doc. 85]. Counsel for the BoNY further explained at oral argument consistent with its discovery responses that the Activity Log is an internal document prepared by BoNY in its regular course and not for litigation. The Trustee offers nothing but speculation to rebut the BoNY's explanation.

ground that the Trust Agreement is irrelevant. The Trustee argues that if the Trust Agreement had been produced, the Trustee would use it not only to confirm the existence of the Protium Master Grantor Trust, but to review for any inconsistencies between the indorsement requirements of the Trust Agreement and the indorsement at issue herein. Even assuming that the Trustee's suppositions are correct, such proof would have no bearing on the Court's decision. The indorsement is valid under Kentucky law, regardless of any requirements set forth in the Trust Agreement, and the Trustee is not a party to the Trust Agreement and cannot contest or enforce its terms. *See, e.g., Rogan v. Bank One, N.A. (In re Cook)*, 457 F.3d 561, 567 (6th Cir. 2006).

## Conclusion

There are no genuine issues of material fact. The Note contains a valid allonge with a properly executed indorsement in blank and the BoNY has provided sufficient proof that it acquired possession of the Note approximately two years prior to the bankruptcy. The BoNY was therefore entitled to enforce the Note secured by its properly perfected Mortgage on the petition date and the Trustee may not avoid the BoNY's interest pursuant to his power as hypothetical judicial lien creditor under § 544.

For the foregoing reasons, the Trustee's Motion for Summary Judgment [Doc. 86] shall be DENIED and the Defendant BoNY's Motion for Summary Judgment [Doc. 87] shall be GRANTED. A separate order shall be entered accordingly.


Copies To:
J. James Rogan, Esq.
James E. Tebbutt, Esq.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*Gregory R. Schaaf*
**Bankruptcy Judge**
**Dated: Monday, April 15, 2013**
**(grs)**